Good morning, Your Honors. May it please the Court, my name is Roger A. Carnegie and I am the attorney representing plaintiff appellant Edward Levine in this matter. Mr. Levine is present in the courtroom today for Your Honor's information. I would like to reserve ten minutes of my time for rebuttal in that this is a cross-appeal and the issues raised by the City of Alameda are different than those raised by Mr. Levine on his appeal. The issues raised on this appeal by my client revolve around the district court's determination that the City of Alameda was insulated from any liability for Mr. Levine's termination without a due process hearing because the city was not covered under the Monell decision. The district court failed to consider in reaching its conclusion that the city manager, Mr. Flint, who was responsible ultimately for the hire and discharge of employees at the City of Alameda, was in fact a final decision maker and therefore could create liability on the part of the city under Monell due to charter provisions in the Alameda City Charter which specifically conferred the authority on the city manager, Mr. Flint, to terminate individuals. The district court failed to consider this Court's decision in Little v. Carl in which the court indicated that as an alternative to a plaintiff establishing a policy or custom of the city in creating constitutional violations, that a plaintiff could show that an express authority had been conferred upon an individual in making individualized decisions in a personnel matter that would lead to a constitutional violation. Well, in Little, the complaint, as I recall or as I understood it, was the termination itself. That was the allegedly offending act. Is that correct? I believe that was the allegedly offending act in Little. So I understand your cause of action, it isn't the termination, but it's the failure to give what's required by due process. Is that correct? No, Your Honor, that's not our position. Our position is that it's both, really. Our position is that the city manager, Mr. Flint, had indicated a predisposition by his prior conduct before February of 2004 when Mr. Levine was terminated to get rid of Mr. Levine. And in pursuing that conduct, he showed a predisposition towards terminating Mr. Levine. So the fact that he was not the one who was terminated, I think, is a fairly reasonable thing to say. Instead of doing so you have a What's your cause of action for wrongful termination? I mean, do you have a cause of action for wrongful termination here? There is not a cause of action, so to speak, for wrongful termination, Your Honor. The wrongful termination cause of the wrongful termination claim is embedded in our claim that Mr. Levine's layoff was pretextual and a sham and that it was a mask for what would have otherwise been a four-cause termination, which, if we were correct, would have required under the city's own civil service rules that Mr. Levine be given a hearing on his discharge. I understood your claim to be one having to do with process. The termination was certainly behind what required the process. It's because of the termination that your client alleges he's entitled to this pre-termination hearing. And we're now connecting up back to the Bunnell point, and that's where I don't know that little really speaks to this case, because there's no Is there anything in the record that indicates that the city manager was given policymaking authority as to whether or not to provide due process? Well, no, not that not that I know of, Your Honor, not in the record, but it is definitely Well, there may be one point in the record that I can refer to that would at least infer that the city manager considered due process rights when implementing a decision such as Mr. Levine's and responding to Mr. Levine's concerns about whether or not this was a pretext and sham layoff. And that is in the city charter, which we cited in our brief, it's Article 7, Section 7-2C and O of the Alameda City Charter. There's an express limitation on the authority of the city manager that his actions must be subject to the civil service rules of the city. And the civil service rules require that a termination be adjudicated in a due process manner and that due process rights be abided by. Our claim is that Mr. Flint essentially was required either by that provision or by independent law to respect Mr. Levine's claim that his layoff was a pretext and a sham and that he should have been getting some kind of evidentiary hearing to establish that fact. Because if he is able to establish pretext and sham, then he has a wrongful termination. Because the only way to get rid of an employee such as Mr. Levine is for cause. Because he is a public employee. First, you have to say that he didn't get terminated. He got laid off. Right? I mean, your – this – I find this an unusual case. I find it to be so, too, Your Honor.  All right. Your client was not terminated. Your client was laid off purportedly because of what, lack of funding? Purportedly because his position, the funding was withdrawn for his position and that the work had ceased for that position. So technically he wasn't terminated. And you want to have a hearing not because the city has to show cause for terminating him, but because you have an opportunity to say that the reason that they gave wasn't the real reason and so therefore they have to show cause for why they would – why they really terminated him rather than laying him off. Is that? In good part, that is correct, Your Honor. Another component to that argument, though, is that Mr. Flint showed by his conduct prior to the layoff, effective date, that he wanted to terminate Mr. Levine. He had cited reasons to people, that's in the record, that he felt Mr. Levine shouldn't be working for the city. He implemented a performance improvement plan at about the same time as he testified he made the decision to lay Mr. Levine off. And that was contrary to Mr. Levine's manager's opinion that he had done nothing to deserve a performance improvement plan. Mr. Levine had also taken action to cut back on Mr. Levine's work and had given directions through the finance administration manager, Nanette Banks, that Mr. Levine was not to receive work outside of the funding source that he had been working on. And, in fact, he had been working on other projects outside of that funding source. But that goes to what, that's what you would show where? At a hearing, Your Honor. This goes to Mr. Flint's intentions vis-à-vis the layoff. Because the unusual part of this case is that it involves, the layoff involves a single employee. That's one of the problematic issues in this case, is you don't normally see a single employee laid off for economic reasons. I mean, it may happen, but we don't see it in cases too often. It's usually a mass layoff, which with demonstrable financial and fiscal reasons that are stated in a budget workup. So we don't have that kind of hard evidence. This context doesn't make it remarkable, though. I mean, it happened to be your client who reports that, at the moment at least, this hotel and golf course project isn't economically viable. So I'm not sure that it's a huge leap if the city concludes, well, this isn't going to be a project in the near term, that they decide they don't need to keep employing the people that were working on that project. Now, maybe your client could do other things, but cutting back an employee when you don't need that position seems to me a logical thing for an employer to do. If that were the only decision that the city had made, that would be correct, Your Honor. But that's not the only decision the city made. What the city did was they had assigned Mr. Levine other project work outside of the funding source that was indicated as the reason for his layoff, the lack of that funding. They had given him other work. In the meantime, other work that he had done previously and been responsible for was being parceled out to other employees, some of whom were new hires. If the city is not going forward with a hotel and golf course project, it doesn't need as many people. Now, sure, your client could do other things. Other people could do this. But there's not as much stuff being done. So what I heard you saying is that it's remarkable to have a termination of a single person because of lack of work. Usually it's a mass layoff. The city is broke. I'm saying, gee, if the city decides it's not going to continue with a given project, laying off the person that's working on that project isn't so unusual. We're in Federal court. I can understand a State claim that there was a contractual obligation to give this fellow other work or they were breaching the terms of an employment understanding or something, assuming that you could make a State claim. But that appears to be a State claim. It doesn't appear to be a Federal claim. So that the Federal claim is, as I understand it, that he should have had a hearing in order to show that what they told him was wrong and therefore they should have done something else. I've never seen that. Can you point me to a case where it's close to that situation? Believe me, Your Honor, I have searched and searched. And the only cases that I found that address the issue even close to Mr. Levine's situation is the Dwyer case, which we cited, which is an 85 case out of New York. And I believe it's the Duncan case that cited the exception being where a single employee is laid off and there aren't demonstrable or claims, pretext, and sham, that that may be an exception to and should be an exception to a mass layoff situation. Is that a due process case? The Duncan case, I believe, was a due process case where the employees were claiming they had a right to a hearing. And I believe the Court found that they were not entitled to a hearing because of the nature of the mass layoff and the fact that there were budgetary and fiscal analyses done which underlaid the layoffs and therefore created a basis, a demonstrable, objective basis for the mass layoffs. But in this case, what we have is an employee who has been targeted over a course of up to a couple of years by the comments Mr. Flint had made in the conduct of city employees pursuant to his direction and control that he didn't want Mr. Levine working for him anymore. And that evidence is in the record. And the course of conduct led directly to, up to the time that Mr. Levine was laid off. So what we have here is an issue of whether or not there was a genuine layoff or this was a mask. The layoff was a mask to discharge Mr. Levine and avoid his due process rights. The second issue that, by the way, I wanted to mention the Gillette case. In Gillette, the Ninth Circuit case we cited in our brief, the Court found that it was precisely because the police chief in that case did not have authority and had not been delegated authority over personnel policies with respect to peace officers that they found that there was no Monell issue, that the city was not liable, because the responsibility for personnel policy had been directly conferred under the city charter to the city manager and the city council. We would argue that that's exactly the case we have here, is the city charter confers that personnel policy authority to Mr. Flint, the city manager. With respect to the second point we raised on appeal, the qualified immunity issue, the district court found that Mr. Flint did occupy official status and he had violated an established constitutional right, i.e., Mr. Levine's right to a due process hearing, and that the only prong of the qualified immunity test that the court needed to analyze was the intent of Mr. Flint with respect to the layoff of Mr. Levine. Again, we get back to the intent of Mr. Flint as city manager is indicated to be a predisposition towards terminating Mr. Levine prior to the time that the layoff was announced. We go back to the same evidence that I reiterated earlier, the directions he had given to the finance administration manager, which were passed down to Ms. Grace Sagan-Harley, not to give Mr. Levine certain work outside of the funding sources, that Mr. Levine was to be scrutinized with respect to the work he was doing, that there's actually an exhibit in the record that has the notes that Ms. Banks had taken with respect to the directions given to squeeze Mr. Levine out of his position at that time and create a situation where a layoff would look more viable. And then we reached the PIP, the performance improvement plan, that was to be implemented in October or November of 2003 at about the same time Mr. Flint decided to layoff Mr. Levine. The last factor that bears upon that predisposition of Mr. Flint to get rid of Mr. Levine is the reassignment of the work duties, which is extensively discussed in our brief. These reassignments of work duties were done both immediately before Mr. Levine was laid off and continued after the layoff had occurred. I wanted to go back to a point that Your Honors raised with respect to whether the work was ongoing or not. In fact, what happened with this project is that the city council, which sits also as the authority that oversees the redevelopment of the Naval Air Station property, decided that the project, the hotel, was not economically viable as of fall of 2003. It, of course, had been found to be the only viable use of this land because of environmental restrictions, restricted building, essentially, that can happen on this property. The city council, acting as the ARRA, which is the authority that oversees this type of work, they suspended the project. They did not terminate the project. And by suspending the project, they acknowledged the fact that the work was going to be ongoing because there is, as on many of these closed armed services bases, there are toxic soil problems. There are environmental impact report problems. There are problems remediating the property because you have to get certain kinds of soil to use and those types of things. And that work was all ongoing, and that's part of the work that was reassigned that had been, at least in part performed by Mr. Levine prior to his layoff, was reassigned to other persons. So the work did not stop on this project. It was simply a portion of it was suspended, and the environmental reclamation and the work relating to the remediation of the site continued. Well, government employment isn't necessarily designed to be full employment for everybody that has a job. You work for the government doesn't mean you get to work for the government forever, as long as there's something, some small amount of work to do. If the total size of the project is shrinking, and if they're not going to build a hotel and a golf course, it presumably is shrinking at least some, then it's not a big surprise to me that they decide to reduce staff somehow. That's not to say your client doesn't have the due process rights, but the notion I heard you say that it's unusual not to have a mass layoff, it's unusual to terminate just one person, I just kind of blank on that, because if you've got less work than terminating one person, somebody, sounds like a logical thing to do. It may not be that your client's the right guy, but I don't raise my hand with shock at the notion that the city terminates one person. Well, perhaps I misspoke myself, Your Honor. What I really meant, this case is unusual in the sense that you do not see many reported cases or other cases that are litigated on this issue. You have about a minute and a half left. The last point that I would like to make is that on summary judgment, the judge below adjudicated the intent and reasonable conduct factors of Mr. Flint's actions in terminating and leading up to the layoff of Mr. Levine. We would submit to the Court that that was an improper determination because there is conflicting evidence in the record as to Mr. Flint's motives and whether his conduct was, quote, unquote, reasonable, as those are questions of fact. Thank you, Your Honor. You have a minute left for a rebuttal. Excuse me? You have about a minute left for a rebuttal. Thank you. For the cross-appeal or whatever. We'll be generous because there are a number of issues. Thank you. May it please the Court, my name is Linda Tripoli, and I am the attorney for Pelley and cross-appellant City of Alameda and James Flint. The oral argument to this point in time is correctly focused. Excuse me. I apologize. It is correctly focused on the fact that the allegations of a sham layoff and a pretext layoff would have been more than appropriate for a state court cause of action for a writ of mandate whereby Mr. Levine contended that the layoff of him was not supported by good cause. And that was exactly what happened in the cases of Winstrow and Trujillo cited by Mr. Levine. However, the Court has correctly recognized that the issue, the federal cause of action at dispute in this case was the issue of due process. The issue of whether it was a sham or a pretext in the cases cited by Mr. Levine, the Dwyer case and the Duncan case. In both of those cases, the courts concluded that no due process was warranted in a layoff situation, except if there was an allegation of sham and pretext. Well, now, didn't the district court, I'll hold that you had to give him a hearing? The district court ruled that the hearing that was provided to him was not meaningful. So in this case, the city never took the position that Mr. Levine was not entitled to a hearing. And, in fact, the city manager, upon receipt of the letter from Mr. Levine, directed Ms. Willis, the HR director, to make sure that his due process rights were respected. Ms. Willis, in conference with the city attorney's office, determined that a meeting with Mr. Flint and with Mr. Levine was appropriate, offered the meeting to listen to his concerns about the layoff and to address those concerns to the extent possible. That meeting took place. I believe ---- Let's break this into pieces. First, it sounds to me like you want to talk about did the city satisfy the due process obligation it has. You acknowledge the city has a due process obligation for a pre-termination hearing of some kind. Correct. Something was offered to plaintiff and at least some kind of conversation was had. Was the district court wrong in concluding that that conversation was not a meaningful pre-termination hearing, that plaintiff didn't have reason to think that the question of his termination was going to be the subject of that discussion, as opposed to these are the forms you fill out or this is our procedure for getting rid of somebody? Yes. What is it that should have told Mr. Levine that this was going to be a meaningful pre-termination hearing? What told Mr. Levine that, well, I think it's important to step back one step and recognize what Loudonville and Clements require the city to provide in terms of due process, and that is notice and the opportunity to respond. The cases make clear that it's not necessarily to resolve the issue of the layoff, but to allow the person who is the subject of the layoff to respond, to raise their issues, to address their concerns, to communicate to the employer why they think they should not be laid off. It is a pre-termination due process. And that is what Loudonville and Clements requires. Mr. Levine received the memo from Ms. Willis, and it's the supplemental excerpts of the record, page 82, where she told him he wasn't entitled to a pre-termination hearing before a third party. However, she would be happy to sit down with him, meet with him, discuss his concerns. Her letter says, and there may be ships passing in the night, but her letter says, in so many words, there is no pre-determination hearing available in the context of a layoff, period. So why should he take that to be an offer to have a pre-termination hearing? Because Mr. Levine himself testified that, in his deposition, that he understood that Ms. Willis was offering the opportunity to sit down with him, meet with him, listen to his concerns, let him address his issues with regard to the concern. And I think that's where the district court went astray on the issue of the due process and finding it not meaningful. The district court focused on the nature of the letter and said that it wasn't clear. But I believe that the proper focus for the district court and for this court is what actually happened in the meeting. And I think the evidence in the record demonstrates that it was the opportunity for it to be meaningful. Whether it was meaningful. Meaningful as to what, though? Meaningful as to how you clear out your office or meaningful as to whether you're going to be required to leave in the first place? Meaningful as to whether he's going to be required to leave in the first place. Because his earlier letter had said, I don't believe the funding has not taken place. The complication in this case, and again where I think the district court went astray, was that Mr. Levine had evidently made a decision to pursue other courses of action. And it was Ms. Willis who pursued with him the opportunity to have the meeting. Now, I believe that due process liability should be imposed on an employer only when it does not provide the opportunity. If the employer provides the opportunity and the employee either does not avail themselves of the opportunity or doesn't take advantage of the opportunity, Loudermill and Clements do not put the burden. Well, I don't quarrel with that proposition. My concern here, and I think what I understood the basis of the district court's decision is that, well, the opportunity is an opportunity that, on its face at least, is not the opportunity you're required to give. Because the letter says in so many words, there is no predetermination hearing. I understand that. So why should he accept this letter and say, okay, then I'm going to get my predetermination hearing by talking to her? Now, it may well be, and I'll accept as a given, that what she meant to say or the reason that letter went is that there's not the kind of predetermination hearing in front of a neutral person that you've asked for. But that doesn't mean that there's not a right to a predetermination hearing. You've conceded that for the purpose of the litigation. So my question, it's the same question, why should the recipient of this letter think that going and talking with Ms. Willis will afford him the predetermination hearing that he is entitled to when the letter itself says there is no predetermination hearing available for this layoff? Because in his letter, he asked for something he was not entitled to. In her response, she's referring to that request for a predetermination hearing before a neutral third party. But in the second part of the letter, she indicates to him that, let's see, again, this is supplemental excerpts of the record, page 82, that, excuse me, while I would be happy to meet with you to listen to your concerns and answer any questions regarding layoff procedures, there is no predetermination hearing. See, that's exactly my concern. It says answer any questions regarding layoff procedures post-layoff and retirement benefits. There's nothing there whatsoever that suggests that she's prepared to listen to or answer questions regarding whether he's terminated in the first place. Because it says there's no predetermination hearing available in the context of a layoff. So why should the plaintiff understand that this conversation she's willing to have with him and does have sort of on-the-fly later is an opportunity to visit the question of whether he's canned to begin with? Because it is in response to his letter in which he raises concerns about the sham and pretext of layoff. She's fair to say, no, you can't have what you ask for. But I don't think by offering an opportunity to talk about how you leave, she's fairly said to him, we'll talk about whether you have to leave or at least I'll listen to what you have to say. And that's what I understand the district court to have concluded. I mean, it's not that she's trying to screw him or anything, but how is he supposed to know that this discussion with her could possibly lead to visiting the questions he's trying to visit? Her letter to him doesn't say that it will. She's offering to talk about the layoff procedures, not about the fact of layoff in the first place. I understand. And again, I believe that the proper focus is that at what took place at the meeting where he raised his concerns. And if assuming that the notice had been clear that he had made the request and she had said what I believe Loudermill and Clements would have required her to say in her letter, which is I'm going to provide you with the opportunity to meet with me and we'll just have to have notice of what opportunity you have, I assume. But would you explain this to me? What is the practical effect of the district court's judgment in this case? Was there injunctive relief ordered? The order of the district court first was that the city, that Mr. Flint provide Mr. Levine with a due process pre-termination hearing before a neutral third party, and he ruled that no one at the city could do that because of the ongoing litigation. In response to a request for clarification, the court then ordered that that due pre-termination due process hearing be a full evidential judiciary hearing, and it is the nature of those aspects. On what? On whether, on Mr. Levine's opportunity to respond. It's the going back to Loudermill and Clements that the employee subject to layoff be provided with the opportunity to respond to the layoff, to argue why they shouldn't be laid off, to argue why they should have another position in the city. Okay. Then as to damages, the district court said that there were no damages because of the qualified immunity and because of Monell, as well as the fact that the cause of action wasn't coupled with any other substantive constitutional cause of action. So the practical effect, ironically in this case, is that all of the litigation that was done on the motion for summary judgment on the age discrimination case will presumably be re-litigated in this pre-termination hearing with regard to the sham and pretext. And in that regard, as I argue to the district court, the fact that Mr. Levine allowed a judgment with prejudice to be entered against him on the summary judgment motion by the city on age discrimination implies it in an inclusive way. It includes in it findings that there was no longer a need for his services, that there was a legitimate business reason for the layoff, and that the reasons stated, the withdrawal of the funding, were not false reasons. So the irony, I suppose, of the district court ruling is that we perhaps will just re-litigate what has already been litigated with the same that much of the evidence cited by Mr. Levine as to sham and pretext are either not supported in the record, are mischaracterized, or are inadmissible hearsay. For example, the contention that city manager Flint had been trying since mid-2002 to remove Mr. Levine is contradicted by the evidence in the record and acknowledged by Mr. Levine, which was that in mid-2002, he and his two subordinates in a different position were scheduled for layoff, and Mr. Flint, as city manager, retained him and placed him into the project manager position for the golf course. So if Mr. Flint had wanted to get rid of Mr. Levine, he had the perfect opportunity at that point in time. He did not do so. He retained Mr. Levine and put him into the golf course project manager position. So the evidence in this case of sham and pretext is not there. This is different than if this case came to the court in a pleading format, in a pleading stage on a motion to dismiss. This case has gone through full depositions, full discovery, and judgment by the district court that the city's inner judgment in its favor on the age discrimination claim, which involves the same sham and pretext issues that Mr. Levine once re-litigated in his due process claim. And I think that in terms of the so I think the court correctly recognizes the evidence in this case. The issue of what's the practical impact of the remedy. And the practical impact of the remedy, as I said, aside from the legal deficiencies, is that all of this has already been litigated. Did Mr. Levine seek a post-termination hearing? No, he did not. So we're limited, we're on this, I want to focus if I can on what the court has ordered for the future, what appears to be left. And let me help clear away some of the bush, because the court really doesn't speak very much, the district court here doesn't speak very much as to why it is that he orders what might have come in the form of a post-termination hearing had it been requested, that is a evidentiary hearing before a neutral third party. The reason given, and maybe you can just let me know, what discussion there was before the district court that led to that? All the court's order says is that after the litigation, any city employee is not sufficiently neutral at this point. Was there any discussion that might shed light as to what in the record the court was referring to in this case? Was there any discussion as to who or what gave him the, led him to the conclusion that nobody working for the city, I take it the city, I think he told us has a new city manager, for example. Correct. Any discussion as to whether the new city manager would be an appropriate person to hear this matter? Your Honor, in terms of that issue, that is, as we noted in the brief, the court, even though there was a hearing on the request for clarification and there was oral argument, and I believe that transcript is in the record, that there was really no explanation on the part of the district court as to why the current city manager would not be the appropriate person to conduct the pre-termination hearing at this point in time. The explanation from the district court, as much as there was, well, there's been this litigation, and so there's not, you know, he can't get a fair hearing because of the litigation, and so I'm going to direct it to go to a neutral third party. I think it's very important for this court to recognize that that order as it stands now is providing Mr. Levine with greater pre-termination due process in a layoff situation than is constitutionally mandated for a city employee who's being terminated for cause, for an employee who engages in theft, for example. In that situation, the skelly rights, the pre-termination rights of that employee is notice and an opportunity to respond, and before someone in the city, and then they have their post-termination rights. What confuses me in this case, and where you seem to be kind of flip-flopping and wanting, I won't say that, but wanting, there seems to be a certain amount of wanting the cake and eating it, too. He was effectively terminated from the city, and he had certain due process rights. That seems to be clear, and he did not, you seem to, he did not, at least certainly did not get notice that he was being given with this meeting the kind of hearing that he was entitled to. So the district court, in ordering that there should be a hearing, it seems to me your arguing was incorrect, because he wasn't really terminated. He was really just laid off, and that's a different situation. I don't understand that. No, that's not the argument I'm making, Your Honor. The Clements case for the pre-termination in a layoff situation is the same pre-termination due process rights, and the difficulty that the district court had also was that I believe that there's pieces of the case that are missing, and they are missing because Mr. Levine did not pursue them for whatever reason. In all my years of practicing public sector employment law, what I would normally have seen in this situation, where someone claims their layoff is inappropriate, is they would have requested the pre-termination due process, and they would have also gone to superior court under a writ of mandate and said that this layoff is a sham, and the city manager can't lay me off because the reasons he's offering are false. And that is the Rennstraw and the Trujillo case. And that part didn't happen. What you would also expect to see in the federal court part of it would be a claim for pre-termination due process and post-termination due process. We did not have a claim for post-termination due process that was pursued in this case. For that reason, I think that there's a vacuum, and the district court felt the need to fill in the vacuum where Mr. Levine, for whatever reason, chose not to pursue causes of action that were available to him. So what was wrong with what the district court did here? The most critical part of what was wrong with what the district court did was to order that the due process hearing now take place before a neutral third party and that it be a full evidentiary hearing. There is not a single case reported under Loudermill that would require a full evidentiary hearing in a pre-termination layoff situation. If it's in front of a neutral party, neutral third party, is there anything you could have but an evidentiary hearing? Because the neutral party is not in place to understand what goes on unless the evidence is put in front of him or her. So I understood the reason for the evidentiary hearing is the court's determination, nobody at the city is untainted. It's got to be somebody from the outside, and the evidentiary hearing kind of follows from that. But it's important to go back to Loudermill and Clements with regard to procedural due process in a layoff situation pre-termination. The pre-termination is the opportunity to respond, to present your side of the story, to explain why the action shouldn't be taken. It would be a full evidentiary hearing would be more than appropriate for a post-termination appeal, but not pre-termination. What happened as a result of the January order which said that there was declaratory judgment that he was entitled to this post-termination hearing? Mr. Levine chose to not pursue that and pursue this appeal. So the court is just, the district court action is just sitting there, nothing happened from waiting for the appeal. Correct. In the February order, it doesn't say anything about the declaratory judgment or equitable relief. Is there a reason for that? I believe that with regard to all of the other types of relief other than providing the hearing, the court concluded that they were precluded either by virtue of qualified immunity, Monell, or by virtue of the fact that Mr. Levine had not pursued a substantive civil rights type of cause of action. So that was as a result of not pursuing the post-termination hearing? Correct. Is that why it was amended? No. That was the court's initial finding was that because, for example, on page, excerpts of the record 221, the court addresses in its order equitable relief. It rejects reinstatement because that was, there was no substantive right demanded. It says that back pay is also equitable relief, that the plaintiff was not entitled to, and that the plaintiff was entitled to, I'm sorry, declaratory judgment that his rights were violated in the order to provide the hearing. So that's, as Judge Clifton just said, that's just hanging out there, or is it? Yes. So I guess my final question is if he was entitled to a hearing under Loudermill in the other cases, and if he did not get adequate notice that he was going to get that kind of a hearing, that this is what that was, then why are they entitled to immunity? Because the court, excuse me, correctly concluded that the city understood it was to provide him with an opportunity, notice and an opportunity to respond, and Karen Willis believed that she was doing that, that she may have been mistaken in her belief, because obviously there are many times constitutional violations, but every constitutional violation doesn't constitute a knowing and intentional violation, and the court, and by evidence of our discussion back and forth, the court, I believe, correctly concluded that Mr. Flint directed that his due process rights be addressed. Ms. Willis, in consultation with the city attorney, did what she thought was required. In effect what he was saying, I don't, is that, are you saying that she, in good faith, thought that what she could, as a reasonable person, could have believed that this satisfied the requirements? Right. That a person can have a reasonable but mistaken belief in what was provided. She's not a party, is she? And she's not a party. So it's really Flint, and Flint, as I recall, the district court found that Flint basically said to her as the HR director, do what has to be done. And that was his only act, and therefore based on qualified immunity, he didn't violate the law. And then just quickly on the Monell liability, the court, the questions have been properly directed to the fact that there was no evidence in the record that the city manager in this case was the policymaker with regard to termination. And in the Lido case, the court's observation was correct, that the constitutional violation there was termination, violation of free speech. Is Mr. Levine still entitled to a post-termination hearing? It would be the city's position that he is not, because that was not raised in the Federal court action, and by the passage of time, latches four years now would indicate any state court claim would be barred by the doctrine of latches in the passage of time. The other thing that kind of puzzles me on the post-termination, suppose the neutral person hearing it decides that he was wrongfully terminated, would that be the case? Would he be entitled to reinstatement? That is a question that the district court left up in the air. I believe that in terms of, well, again, based on the record, I think that even with a full evidentiary hearing, the layoff is going to be demonstrated to not have been a sham or a pretext. The project is still on hold, has not been resumed. But in terms of the, whether the neutral third party could order reinstatement, the district court was not clear on that. I am not clear on that. I don't believe that that person would have that authority. But I suppose that will have to be. Well, I guess a neutral person could say he was entitled to reinstatement, and then if he doesn't get reinstated, it's a cause of action. Well, I think it's important to be clear that there is the state claim, a state cause of action for a writ of mandate which would address the substance of the layoff, and if he were successful in the substance of the layoff and convince a state court there wasn't reason for the layoff, he would be entitled to reinstatement. But we're not in a wrongful termination setting here. We're in a process setting. We're in a due process setting. And once he's provided the due process, in terms of the ---- But he didn't get due process. Well, obviously the city believes that he did. But if he didn't get due process based on qualified immunity ---- But the court said he did. But based on qualified immunity in Monell, the district court correctly concluded that he wasn't entitled to reinstatement or back pay. I think we need to draw these proceedings as enjoyable as they are to a close. I'm sorry. Thank you. Thank you. I'll try quickly to cover a couple of points, Your Honor. With respect to the meeting with Karen Willis, that's thoroughly briefed in our answer and reply brief at page 19. Ms. Willis admitted that in her deposition cited in the record that she was referring to the applicable memorandum of understanding in existence between Mr. Levine and ---- Since time is short, let me focus you on the piece at least that I care about. And that is why it is that if there's going to be a pre-termination hearing, albeit after the fact, it must be held before somebody not affiliated with the city. For the very reasons that the judge specified in his decision that the ---- Why is it that anybody affiliated with the city is inherently not neutral for a kind of hearing that ordinarily a city employee would conduct? Well, the relationship is tainted at this point. And more importantly, what has happened now is under skelliness progeny, I disagree with opposing counsel, this request for a hearing from Mr. Levine I don't believe specified exactly the type of hearing he wanted, pre-termination or otherwise. But if it did, and I don't have that in front of me right now, but even if it did ask for a pre-termination hearing, the law under the applicable federal and state precedence is that an employee who asks for a pre-termination hearing does not receive it. There is a due process violation, but if the employer confers a post-termination hearing on the employee, that cures the defect. And in Dwyer, the case we cited out of the Second Circuit, the court said that an employee's request for a hearing under these circumstances where there's a claim of pretext and sham in the layoff, that request can be construed as being for both a pre-termination hearing, if that's not received, that request can be construed as a post-termination hearing request also. I have a copy of Mr. Levine's letter at SCR 81, and it does explicitly request a pre-termination hearing. Is it your understanding of the law that that request, if he doesn't get a pre-termination hearing, can be or should be construed as a request for a post-termination hearing? Yes, Your Honor. Did the district court discuss that? I have not read that transcript. The order doesn't make any reference to anything other than the taint carried by any city employee. If I go back and look at the transcript before the district court, did the district court talk about that at all? You may not remember. That's fine. I don't remember, Your Honor. I really don't. I wish I did. Is it true that you did not carry forward with the declaratory relief that was ordered that to get a post-termination hearing? That's correct, Your Honor. And the reason for that is because the city appealed the order. Therefore, it became a moot point. We would have pursued it had it not been appealed, because that's what Mr. Levine wants, is a hearing on this matter one way or the other. So it was not you that didn't go ahead with it. It was the city's appeal? That's correct, Your Honor. Once that order was appealed, there's nothing to attach to the to direct a neutral to have authority to hear this matter. That's back to square one, basically. Okay. Any further questions? Mr. Levine is the attorney in this case. He filed the appeal first. The city filed a cross-appeal. In discussion with Mr. Carney, he indicated that he did not want to go forward with that hearing. He wanted the case appealed as well. But because of his characterization, he used to go forward with the declaratory relief.  Your Honor, there's nothing in the record to that effect, and that is not the case, I can assure you. Who appealed first? We appealed first, Your Honor. But it's on appeal. You couldn't really hear it. Your Honor, we appealed. Both parties appealed on the very last day. The city appealed after we filed ours. Okay. We were hoping that there would be no appeal, but that's not the case. And counsel had indicated to us that they were going to appeal, because they fought this case vehemently for three years. What we do know is that there was no hearing. There has been no hearing since. So here we are. Thank you, Your Honor. And here we are. All right, thank you. The case just argued is submitted for decision, and we'll hear the next case, which is Reichert v. National Credit System. Mr. Reichert. Mr. Court, good morning, Your Honors. David Kaminsky on behalf of Appellants National Credit Systems, Inc., Jim North, and Faye Miles. The sole issue before this court is whether the district court erred in granting summary judgment.
judges: Hug, Schroeder, Clifton